IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 7, 2001 Session

## STATE OF TENNESSEE v. EDWARD LORENZO SAMUELS

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Davidson County
No. IF-8702      Cheryl A. Blackburn, Judge**

_____

**No. M1999-01821-SC-R11-CD - Filed May 4, 2001**

_____

After revoking the defendant's community corrections sentence, the trial court increased the length of the defendant's sentence from six to eight years and ordered that the sentence be served consecutively to a sentence in an unrelated case. Although the Court of Criminal Appeals affirmed the trial court's judgment, we granted the defendant's application for permission to appeal and remanded the case to the Court of Criminal Appeals for consideration of our decision in State v. Taylor, 992 S.W.2d 941 (Tenn. 1999). The Court of Criminal Appeals again affirmed the trial court's judgment. After considering the record, we conclude that upon revoking the community corrections sentence, the trial court held a proper sentencing hearing and did not err either in increasing the length of the defendant's sentence or in ordering that the sentence be served consecutively. We therefore affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals
Affirmed**

E. RILEY ANDERSON, C.J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, ADOLPHPO A. BIRCH, JR. JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Jeffrey A. DeVasher, Assistant Public Defender; and Ralph W. Newman, Assistant Public Defender, Nashville, Tennessee, for the appellant, Edward Lorenzo Samuels.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon L. Brox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In December of 1996, the defendant, Edward L. Samuels, pled guilty to theft of property over $1,000, a class D felony, and was sentenced as a Range II multiple offender to serve six (6) years in

the Davidson County Workhouse.[1] The sentence was to run concurrently with a five (5)-year sentence the defendant was already serving for an unrelated cocaine offense.

In July of 1997, the defendant filed a petition to suspend his sentence. The trial court conducted a hearing at which the defendant testified that he had served a year in custody and had received treatment for both substance abuse and anger management. The defendant testified that he had been granted a suspended sentence and community corrections for the cocaine offense and that he had arranged for housing and employment in the event he also received a suspended sentence in the present case. The trial court granted the defendant's petition and placed the defendant on community corrections with the conditions that he serve thirty additional days in custody and reside in a halfway house facility for one year upon his release. The defendant was later released and began serving the community corrections sentence.

In January of 1998, a warrant was issued charging the defendant with violating the terms of his community corrections sentence. The trial court held a hearing at which the defendant testified that upon his release from custody he had been unable to pay for housing, became depressed, and resumed his use of drugs. The trial court revoked the community corrections sentence and determined that the defendant should be resentenced to eight years instead of the original six-year sentence.

The trial court decided to increase the length of the sentence after finding several enhancement factors and no mitigating factors. The trial court found specific facts supporting three enhancement factors – previous history of criminal convictions and behavior; unwillingness to comply with conditions of a sentence involving release; and commission of a felony while on probation. See Tenn. Code Ann. § 40-35-114(1), (8), and (13)(C) (1997 & Supp. 2000). The trial court also ordered the sentence to run consecutively to the defendant's sentence for the cocaine offense, after finding that the defendant was a professional criminal who knowingly devoted himself to criminal acts as a major source of livelihood and that the defendant was an offender whose record of criminal activity was extensive. See id. § 40-35-115(b)(1) and (2) (1997).

After the Court of Criminal Appeals affirmed the judgment of the trial court, the defendant sought permission to appeal on the grounds that the trial court erred by increasing the length of his sentence and by ordering the sentence to be served consecutively with his sentence in an unrelated case. We remanded the case to the Court of Criminal Appeals for consideration of the defendant's arguments under our decision in State v. Taylor, 992 S.W.2d 941 (Tenn. 1999), in which we held that the trial court lacked the authority to impose consecutive sentencing after revoking probation where the defendant had served the sentence in the Department of Correction. After the Court of Criminal Appeals affirmed the trial court's judgment for a second time, the defendant once again sought permission to appeal. We granted review to consider these issues.

---

[1] The applicable sentencing range was four to eight years. See Tenn. Code Ann. § 40-35-112(b)(4) (1997).

## ANALYSIS

### Standard of Review

We begin our analysis with the familiar principles that govern our review of a sentencing determination imposed under the Criminal Sentencing Reform Act of 1989. When reviewing the length, range, or manner of service of a sentence imposed by the trial court, the appellate court must conduct a de novo review on the record and presume that the determinations made by the sentencing court are correct. See Tenn. Code Ann. § 40-35-401(d) (1997).

To facilitate appellate review, the trial court "'must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.'" State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997) (quoting State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994)). Where it appears that the trial court has failed to consider or comply with the statutory provisions governing sentencing, appellate review is de novo on the record without a presumption of correctness. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000).

### Community Corrections

The Tennessee Community Corrections Act was enacted in 1985. One of the purposes of the act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(a) (1997); see State v. Griffith, 787 S.W.2d 340, 341 (Tenn. 1990).

Under the Community Corrections Act, "the court is authorized to sentence an eligible defendant as defined in this section to any appropriate community-based alternative to incarceration provided in accordance with the terms of this chapter, and under such additional terms and conditions as the court may prescribe, in lieu of incarceration in a state penal institution or local jail or workhouse." Tenn. Code Ann. § 40-36-106(e)(1) (1997 & Supp. 2000). The act further provides:

> In sentencing an eligible defendant to any community-based alternative to incarceration, the court shall possess the power to set the duration of the sentence for the offense committed at any period of time up to the maximum sentence within the appropriate sentence range, and shall retain the authority to alter or amend at any time the length, terms or conditions of the sentence imposed.

Id. § 40-36-106(e)(2) (1997 & Supp. 2000) (emphasis added).

With these statutory provisions and the appropriate standard of review in mind, we turn to the specific issues raised by the defendant in this case.

### Resentencing Following Revocation of Community Corrections

The defendant argues that after revoking the community corrections sentence the trial court arbitrarily and erroneously increased the length of his sentence from six to eight years and ordered the sentence to be served consecutively to his sentence in an unrelated case. The defendant's argument is largely based on the following comments made by the trial court when it originally granted the community correction sentence:

> One of the things holding over your head is I could almost guarantee you an eight year sentence consecutive, if you were to violate this; do you understand what that means, because you've got a record that would justify it, if we had a sentencing hearing. No question about it.
>
> . . . .
>
> I will tell you that I will remember this . . . [and] that if you violate this, we will have a little sentencing hearing, and you are probably going to get eight years consecutive.

The State responds that the trial court properly held a sentencing hearing after revoking the community corrections sentence and that the sentence was supported by the trial court's findings.

We begin our review by observing that a trial court has the authority, upon revocation of a community corrections sentence, to resentence a defendant to a period of incarceration up to the maximum for the offense. See State v. Griffith, 787 S.W.2d at 341. The applicable statute provides:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

-4-

Tenn. Code Ann. § 40-36-106(e)(4) (1997 & Supp. 2000); see also id. § 40-36-106(e)(2) (1997 & Supp. 2000) (In imposing a community corrections sentence, the trial court "shall retain the authority to alter or amend at any time the length, terms or conditions of the sentence imposed.").

In resentencing a defendant, a trial court may impose a sentence of incarceration greater than the sentence originally imposed without violating the double jeopardy provisions of the United States or Tennessee Constitutions. See State v. Griffith, 787 S.W.2d at 342.[2] Before imposing a new sentence, however, the trial court must conduct a sentencing hearing in accordance with the principles of the Criminal Sentencing Reform Act, and an appellate court must review the new sentence in accordance with the standard of review discussed above. See, e.g., State v. Crook, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998).

In this case, the record reveals that the trial court held a sentencing hearing before resentencing the defendant. The trial court found that the defendant had been sentenced as a Range II offender and that the applicable range of punishment for the class D felony was four to eight years. The trial court increased the length of the sentence from six to eight years after finding three enhancement factors were supported by the factual record. The enhancement factors were (1) the defendant had a previous history of criminal convictions and behavior; (2) the defendant had a history of unwillingness to comply with conditions of a sentence involving release; and (3) the defendant committed a felony offense while on probation. See Tenn. Code Ann. § 40-35-114(1), (8), and (13)(C) (1997 & Supp. 2000). The trial court gave "great weight" to these enhancement factors and found no evidence of mitigating factors. Moreover, in increasing the length of the sentence, the trial court stated that it had considered the principles of sentencing, the arguments of counsel, and the characteristics of the offense.

With regard to consecutive sentencing, the trial court ordered the sentence to run consecutively to the defendant's prior sentence after finding that the defendant was a professional criminal who knowingly devoted himself to criminal acts as a major source of livelihood and that the defendant was an offender whose record of criminal activity was extensive. See id. § 40-35-115(b)(1) and (2) (1997). The trial court expressly found that "the aggregate term reasonably relates to the severity of the offenses, and is necessary to protect the public from further serious conduct."[3]

In our view, the findings of the trial court support its decision regarding the length of the sentence and consecutive sentencing. In particular, we note that the presentence report reflects the defendant's prior convictions for selling narcotics, aggravated burglary, numerous burglary offenses, numerous theft offenses, grand larceny, drug possession, assault, criminal trespassing, and criminal impersonation, among others. Moreover, the trial court's findings refute any inference that the trial

---

[2] The new sentence must be in the same sentencing range as the original sentence, however, and not a greater sentencing range. State v. Patty, 922 S.W.2d 102, 104 (Tenn. 1995).

[3] We also note that, contrary to the defendant's position, there is no statutory provision limiting consecutive sentencing to related offenses or offenses stemming from the same proceeding. See, e.g., State v. Moore, 942 S.W.2d 570, 572 (Tenn. Crim. App. 1996).

court's decision was predetermined and arbitrary based on its comments when originally granting the community corrections sentence. The record indicates that the trial court strongly advised the defendant of the possible consequences of violating the community corrections sentence. When the community corrections sentence was later revoked, the trial court did not simply impose a predetermined sentence; instead, it conducted a proper sentencing hearing and made the appropriate findings to support its ruling. Accordingly, we find no error.

## Authority of the Trial Court

The defendant, relying on our decision in State v. Taylor, 992 S.W.2d 941 (Tenn. 1999), argues that the trial court lacked the authority to revoke the community corrections sentence and to require the sentence to run consecutively to his sentence in an unrelated case. The State maintains that the trial court's determination was supported by the record and that Taylor is distinguishable from this case. We agree with the State's position.

Our analysis necessarily begins with the extensive and tortuous procedural history in State v. Taylor. The defendant entered guilty pleas in two cases to a total of three burglary offenses and two misdemeanor theft offenses[4] and received an effective sentence of two years to be served in a community corrections program. State v. Taylor, 922 S.W.2d at 942. When the defendant was later indicted for two counts of felony theft in a third case, the trial court revoked the community corrections sentence and ordered the defendant to serve four years in the Department of Correction for the burglary and misdemeanor theft convictions in the first two cases. Id. at 942-43. When the defendant pled guilty to the two counts of felony theft, the trial court imposed a sentence of two years probation, to be served consecutively to the sentences in the first two cases. Id. at 943.

While incarcerated for the burglary and misdemeanor theft convictions in the first two cases and serving the four-year sentence, the defendant completed a "Special Alternative Incarceration Unit Program," also known as "boot camp," and was placed on supervised probation. Id. When the defendant later failed to pay restitution and fees, the trial court revoked probation in all three cases and ordered the defendant to serve six years in community corrections. Id. When the defendant was later charged with new offenses, the trial court revoked the community corrections sentence and resentenced the defendant to serve four years for the burglary and misdemeanor theft convictions in the first case; four years for the burglary and misdemeanor theft convictions in the second case; and two years for the felony theft convictions in the third case, all to be served consecutively. Id.

In reviewing the resentencing determination by the trial court, we distinguished a revocation of community corrections from a revocation of probation. As we have already noted, a trial court, upon revoking a community corrections sentence, has the authority to "resentence the defendant to

---

[4] We later found plain error in that the defendant pled guilty to a burglary offense for which he had not been indicted and we modified the judgment to reflect conviction for two burglary offenses and three misdemeanor theft convictions. State v. Taylor, 922 S.W.2d at 943-44.

any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed . . . ." Tenn. Code Ann. § 40-36-106(e)(4) (1997 & Supp. 2000). A trial court revoking probation, on the other hand, can only "cause the defendant to commence the execution of the judgment as originally entered . . . ." Id. § 40-35-311(d) (1997) (emphasis added); see also id. § 40-35-311(e) (Supp. 2000); id. § 40-35-310 (1997).

We also observed that once the trial court sentenced the defendant to the Department of Correction, it no longer had jurisdiction over the sentence. See id. § 40-35-212(d) (1997). Moreover, when the Department of Correction placed the defendant upon probation, the trial court regained jurisdiction only to revoke probation. Id. § 40-35-311(d) (1997). As noted above, a trial court revoking probation can cause execution of the judgment as "originally entered." See id. § 40-35-311(d) (1997); id. § 40-35-311(e) (Supp. 2000). As a result, we concluded that the trial court had no authority to increase the defendant's sentences or to run them consecutively. State v. Taylor, 992 S.W.2d at 945-46.

In contrast, the defendant, Samuels, in the present case was initially sentenced to six years in the Davidson County Workhouse. See Tenn. Code Ann. § 40-35-212(c) (1997) ("Unless the defendant receives a sentence in the department, the court shall retain full jurisdiction over the manner of the defendant's sentence service."). Moreover, unlike Taylor, the defendant was placed on community corrections and not probation. As a result, upon revocation of such the community corrections sentence, the trial court had the authority to resentence the defendant pursuant to Tenn. Code Ann. § 40-36-106(e)(4).

Finally, although the defendant correctly asserts that section 106(e)(4) does not explicitly refer to consecutive sentencing, it does provide that a trial court may resentence a defendant "for any period of time up to the maximum sentence provided for the offense committed." Id. § 40-36-106(e)(4) (1997 & Supp. 2000). Moreover, the act also provides that the trial court "shall retain the authority to alter or amend at any time the length, terms or conditions of the sentence imposed." Id. § 40-36-106(e)(2) (1997 & Supp. 2000) (emphasis added). When resentencing a defendant following the revocation of community corrections, the trial court must conduct a sentencing hearing in accordance with the principles and procedures of the Criminal Sentencing Reform Act, which obviously address consecutive sentencing. See id. § 40-35-115 (1997). As we emphasized earlier, the trial court conducted such a hearing and its findings were supported by the record in this case.

## CONCLUSION

After consideration of the record, we conclude that upon revoking the community corrections sentence, the trial court held a proper sentencing hearing and did not err either in increasing the length of the defendant's sentence or in ordering that the sentence be served consecutively. We therefore affirm the judgment of the Court of Criminal Appeals. It appearing that the defendant is indigent, the costs of appeal are taxed to the State of Tennessee.

_____
E. RILEY ANDERSON, CHIEF JUSTICE