IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 26, 2005

## STATE OF TENNESSEE v. PRESTON MORRIS KISER

**Appeal from the Criminal Court for Sullivan County
Nos. S47,486; S47,497; S47,541; S47,726      R. Jerry Beck, Judge**

### No. E2004-02722-CCA-R3-CD - Filed August 10, 2005

The Defendant, Preston Kiser, pled guilty to multiple counts of passing worthless checks, theft under $500, theft over $500, forgery, reckless driving, and driving on a suspended license. For these offenses, the Defendant received an effective sentence of three years as a Range I, standard offender. The Defendant was ordered to serve his sentence on community corrections. Following a subsequent revocation hearing, the Defendant's community corrections sentence was revoked and the trial court ordered him to serve his sentence in confinement. The Defendant now appeals the trial court's revocation order. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and J.C. MCLIN, J., joined.

Terry Jordan, Assistant Public Defender, Bountville, Tennessee, for the appellant, Preston Morris Kiser.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James F. Goodwin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Following his guilty pleas, the Defendant was ordered to serve his effective three-year sentence in the residential community corrections program known as "Hay House." Mr. Stewart Canter testified at the revocation hearing that he was the Defendant's supervisor at Hay House. As the Defendant's supervisor, Mr. Canter reviewed the written conditions of the Defendant's sentence with him, a copy of which the Defendant signed and a copy of which was admitted into evidence at the revocation hearing. One of the conditions of the Defendant's sentence was that he would "reside at the John R. Hay House Residential/Correctional Treatment Facility as specifically directed by

either the Court, Probation Officer or Counselor." Another condition was that the Defendant would "follow all rules of the John R. Hay House Residential/Correctional Treatment Facility and /or the Day Reporting Center."

Mr. Canter testified that the Defendant understood that he was to reside at the Hay House and did so at the commencement of his sentence on March 12, 2004. Mr. Canter testified that, on April 6, 2004, the Defendant was placed on the "Phase 2 nonresidential phase" of the facility. During "Phase 2," the Defendant was no longer required to reside at the facility but was to report once a week. The Defendant reported as required during his first week of Phase 2, missed reporting the next two weeks, and then reported again the following week. At that time, May 14, 2004, the Defendant was "ordered to report back into residence." The Defendant did so. Mr. Canter stated that the file reflected no phone calls from the Defendant during the two-week period that he did not report.

After resuming residence at the Hay House, the Defendant signed out to go to work on May 25, 2004, but "failed to return back to residence." Mr. Canter then pursued a violation charge against the Defendant.

Mr. Canter stated that the Defendant called the facility twice on May 26th and was advised both times that he needed to return immediately. The Defendant did not do so. The Defendant had not been told that he could leave the facility.

The Defendant testified. He stated that, during the two-week period that he failed to report while on Phase 2, he called the facility each week and reported his whereabouts. The second week that he missed a personal report, he was at a hospital with his "soon to be step-son," and was told over the phone that it was "fine." After he was ordered back into residence, he stayed a week and then "was under the assumption that [he] was released back on Phase 2, reporting back weekly."

The Defendant maintained that, when he left the facility on May 25th, he was under the assumption that he had been placed back on Phase 2 of the program. The Defendant stated that he formed this assumption after a conversation he had with Mr. Canter. However, the Defendant acknowledged that, after he left on May 25th, he did not report back on a weekly basis as was required under Phase 2. Indeed, he did not revisit the facility after he left on May 25th until his arrest on August 19th for violating the terms of his release.

The Defendant stated that he was self-employed in the construction business and that he had made full restitution on the charges against him. He asked the trial court to return him to some form of probation because he had a fiancé and children to support.

After hearing this proof, the trial court found that the State proved "beyond a reasonable doubt" that the Defendant had violated the terms of his sentence by failing to report as required. The court found the Defendant's testimony not credible and ordered his probation revoked and the Defendant to serve his sentence in the Department of Correction.

The Defendant now appeals, arguing that the trial court abused its discretion in revoking his Community Corrections sentence and ordering him to serve the remainder of his sentence in confinement.

A trial court has the discretion to revoke a community corrections sentence upon a finding that the defendant has violated the conditions of the agreement. See Tenn. Code Ann. § 40-36-106(e)(4); State v. Harkins, 811 S.W.2d 79, 82 (Tenn.1991). The court may then resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum provided for the offense committed, less any time actually served in any community-based alternative to incarceration. See Tenn. Code Ann. § 40-36-106(e)(4); State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001).

The proof of a community corrections violation need not be established beyond a reasonable doubt; it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. See Harkins, 811 S.W.2d at 82-83. When revoking a community corrections sentence, the trial court must place its findings of fact and the reasons for the revocation on the record. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).

The Tennessee Supreme Court has held that an abuse of discretion standard of appellate review should be used to address the revocation of a Community Corrections sentence. See Harkins, 811 S.W.2d at 82-83. Before a reviewing court is warranted in finding an abuse of discretion in a Community Corrections revocation, it must be established that the record contains no substantial evidence to support the conclusion of the trial court that the defendant violated the terms of the Community Corrections program. See id.

We have no difficulty in concluding that the trial court committed no abuse of discretion in finding that the Defendant violated the terms of his Community Corrections sentence. The Defendant was aware of the Hay House requirements, both during the residential phase and the subsequent reporting phase, and he failed to abide by the terms of either phase. The Defendant acknowledged that he "should have" reported as required, but the evidence is undisputed that he did not. The Defendant's explanation was that he "assumed" certain conditions to be in place; however, the Defendant failed to comply even with those assumed conditions. The Defendant expressed no remorse at the revocation hearing for his repeated violations, but contended that he should again be placed on some form of release because he had made restitution and because he needed to work to support himself and his fiancé and her children. The trial court found the Defendant a less than credible witness. The record supports the trial court's decision to revoke the Defendant's Community Corrections sentence.

Upon revoking the Defendant's placement in the Community Corrections program, the trial court had to determine which sentencing alternative was appropriate for the Defendant. The trial court determined that the Defendant should be placed in confinement with the Tennessee Department of Correction. We find no abuse of discretion in this ruling. The Defendant had demonstrated his unwillingness to comply with the terms of a sentence involving release in the community. The Defendant expressed no remorse for his repeated violations and, further, demonstrated himself to

be a less than credible witness to the court. The Defendant's conduct entitled the trial court to conclude that the Defendant's potential for rehabilitation was less than promising. Accordingly, we conclude that the trial court did not abuse its discretion in ordering the Defendant to serve the remainder of his sentence in confinement.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE