# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
March 11, 2014 Session

## STATE OF TENNESSEE v. BRIAN GARRETT WALLACE

### Appeal from the Circuit Court for Robertson County
### No. 74CC3-2012-CR-23    John H. Gasaway, III, Judge

---

### No. M2013-01172-CCA-R3-CD - Filed May 12, 2014

---

Appellant, Brian G. Wallace, pled guilty to five counts of attempted especially aggravated exploitation of a minor and one count of attempted sexual battery. The plea was an open guilty plea, and the trial court sentenced Appellant to an effective sentence of eighteen years which included consecutive sentencing. On appeal, Appellant argues that the trial court erred in imposing consecutive sentences. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and NORMA MCGEE OGLE, JJ., joined.

Roger E. Nell, District Public Defender and Ann M. Kroeger, Assistant District Public Defender, for the appellant, Brian Garrett Wallace.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; John W. Carney, District Attorney General and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual Background*

On January 18, 2012, the Robertson County Grand Jury indicted Appellant for seventeen counts of especially aggravated exploitation of a minor and two counts of

aggravated sexual battery. On January 7, 2013, Appellant pled guilty to five counts of attempted especially aggravated exploitation of a minor and one count of attempted aggravated sexual battery. He pled guilty as a Range II, multiple offender and pursuant to the plea agreement agreed to be sentenced from a minimum sentence of eight years to a maximum sentence of thirty-two years.

The following facts were recited at the guilty plea hearing:

[T]he facts would show that at the time – December 11 of last year – of 2011, [Appellant] was living with [the victim's mother] and her children and [the victim's mother] had a little girl, [the victim], at the age of I believe eight or nine at the time. [The victim's mother], it was late at night, and there had been some previously some – they had shared phones and [Appellant] had taken a SIM card or SD card out of a phone – a card that contains pictures and prevented [the victim's mother] from looking at it. Another occasion, [the victim's mother] picked it up and said something about it and [Appellant] did not want her to – acted like he didn't want her to see what was on the pictures so that night, December 11, [the victim's mother] was up late and changing out his wallet and finds this SD card in his pants pocket. More out of curiosity, puts it in the phone and begins looking at what is on the SD card and discovers that there are pictures taken of [the victim] of a sexual or lascivious nature.

Count Two, Your Honor, we can date – November 14, 2011 . . . and it is of basically [the victim's] buttocks – this point her pajamas are pulled down and it shows her underwear and we do have that distinct pair of underwear that we would – at a jury trial, show that it is her underwear. Count five, Your Honor, is another picture taken that same day too, . . . and this time of naked buttocks of [the victim], and we would be able to say it is [the victim] because of the distinct underwear. Also, the Mom would be able to identify the bedspread and blanket that is in the picture. As well, [Appellant] admitted in a statement that it was of the victim and he did take these pictures.

As to – and that specifically, the admission is specifically to – two, five and eight. Count eight, Your Honor, is another picture taken November 14 2011, . . . it shows a more distinct picture of compete pull down of the panties and another picture of the naked buttocks. Once again, we could determine the victim based on her clothing, bedspread and also based on an admission.

Also, Your Honor, as related – and the reason – in the order it is, Count nineteen, refers to that same event of November 14, in his confession, [Appellant] admits while he was pulling these panties down and taking these different shots of the victim that he rubbed her buttocks. This was – the victim all accounts was asleep, does not remember anything but his confession would be corroborated by the pictures because they are consistent with him – with the panties in one position and pulling them down and pulling them down again, which is consistent with him rubbing the buttocks as he described in his confession. So there would be enough evidence, Your Honor, to corroborate on what [Appellant] is admitting to or admitted to as far as the aggravated sexual – attempted aggravated sexual battery as to the confession.

As to count nine, Your Honor, it's a picture of a different date. It's a – the phone had been set in a particular location and [Appellant] is seen getting the victim dressed and he's got the phone positioned in a manner in which when the victim – he pulls the victim's panties off, it showed – it creates a picture clearly of her vagina, of her naked vagina. [Appellant], once again – this can be ID'd by the mother who can ID the child and ID the blankets in the picture and ID the bedroom, can ID everything [of that] nature. [Appellant] admits in his confession to the picture. The one thing he does say about this picture though is he says he didn't realize the phone was on. At a trial, the State would challenge that, Your Honor, based on the location of the phone and the distinctness of the picture that was created. The phone had to be in a certain position to get that picture. But he does acknowledge, that he was aware of it and didn't know.

As to count sixteen, Your Honor, it's a different picture – you can't tell it's a different date from the two through nineteen range and the count nine incident, but it is a picture of the victim's buttocks with her pants pulled down, it's of jeans and a t-shirt and we can ID that and it was on the same phone, LG phone as well that contained – the same card that contained all these other pictures.

The expert, Your Honor, at T.B.I., at the trial would be able to say that something happened – nine and sixteen he cannot say where they were taken from but he can say that two, five and eight were taken off the phone that was recovered at the scene and that the defendant admitted was his phone.

That would be the facts, Your Honor.

-3-

The trial court held a sentencing hearing on April 11, 2013. At the conclusion of the hearing, the trial court sentenced Appellant to concurrent sentences of nine years and six months for the three counts of attempted especially aggravated exploitation of a minor and the count of attempted aggravated sexual battery. The trial court sentenced Appellant to eight years and six months for the two remaining counts of attempted especially aggravated exploitation of a minor to be served concurrently. The trial court ordered that the eight year and six month sentence be served consecutively to the nine year and six month sentence. Therefore, Appellant's effective sentence was eighteen years to be served at thirty-five percent.

Appellant appeals his sentence.

## **ANALYSIS**

Appellant argues that the trial court erred in ordering Appellant to serve consecutive sentences. The State disagrees.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5) (2010); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, a sentence should be upheld so long as it is within the appropriate range and

the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that, "(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." T.C.A. § 40-35-115(b)(5). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). Our supreme court recently confirmed that the standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. *State v. James Allen Pollard*, No. M2011-00332-SC-R11-CD, ___ S.W.3d ___, 2013 WL 6732667, at *9 (Tenn. Dec. 20, 2013). Our supreme court stated:

> So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal. *See* Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal."); *see also Bise*, 380 S.W.3d at 705.

*James Allen Pollard*, 2013 WL 6732667, at *9.

Appellant argues that the trial court erred in basing consecutive sentences on Tennessee Code Annotated section 40-35-115(b)(5), because he was convicted of "attempt offenses, not completed offenses." Appellant argues the offenses of attempted sexual exploitation of a minor and attempted sexual battery do not constitute sexual abuse under Tennessee Code Annotated section 40-35-115(b)(5).

Appellant has cited to no authority that specifically supports his argument. He cites to *State v. Kevin Allen Gentry*, No. E2009-02041-CCA-R3-CD, 2011 WL 2936403 (Tenn.

Crim. App., at Knoxville, Jul. 21, 2011), to support his argument. *Kevin Allen Gentry* holds that sexual exploitation of a minor is considered sexual abuse under T.C.A. § 40-35-115(b)(5). This case does not support his argument that "attempt offenses" do not constitute sexual abuse under the statute in question. Appellant has not cited to any authority that directly supports his argument that "attempt offenses" cannot be considered sexual abuse under Tennessee Code Annotated section 40-35-115(b)(5).

Furthermore, this Court has previously upheld consecutive sentences based upon "attempt offenses" as sexual abuse under Tennessee Code Annotated section 40-35-115(b)(5). *See State v. David Earl Offutt*, No. M2010-01296-CCA-R3-CD, 2011 WL 2566383, at *14 (Tenn. Crim. App., at Nashville, Jun. 30, 2011) (affirming imposition of consecutive sentences for three convictions of attempted incest after remand for trial court to sentence the defendant for the attempted incest convictions that had been erroneously merged into the defendant's attempted rape convictions); *State v. David E. Offutt*, No. M2007-02728-CCA-R3-CD, 2009 WL 2567870, at *1 (Tenn. Crim. App., at Nashville, Aug. 20, 2009) (affirming imposition of consecutive sentences for three convictions of attempted rape); *State v. Joseph Vermeal*, No. M2005-00568-CCA-R3-CD, 2005 WL 3543417, at *7 (Tenn. Crim. App., at Nashville, Dec. 28, 2005) (affirming the imposition of consecutive sentence stemming from a conviction of attempted aggravated sexual battery to a previous conviction of aggravated sexual battery). Therefore, we conclude that there is precedence for the imposition of consecutive sentences based upon Tennessee Code Annotated section 40-35-115(b)(5) when the convictions involved are "attempt offenses."

Appellant also argues that "the statutory factors weigh against consecutive sentences." The trial court made the following findings:

> The Court may order sentences to run consecutively if the Court finds by a preponderance of the evidence that – under subpart five – the defendant has been convicted of two or more statutory offenses involving sexual abuse of a minor, which he has, with the Court making – considering the aggravating circumstances arising from the relationship between the defendant and the victim if there is one.
>
> Well, the aggravating circumstances as contemplated by this statute, the Court believes, would be – if it existed would be the circumstance brought on by the fact that he was in the household by invitation; that his care of the child from time to time was entrusted to him by the mother; that he was either alone or virtually alone with a child, sufficiently enough to take multiple depictions of her body. So the Court has considered that circumstance. I might say that

the Court has also considered that very same thing when it made a finding that there was a violation of the private trust that took . . . that was given to him by the mother.

The statute goes on to say not only should the Court consider the circumstances that – that might be aggravating because of the relationship that the parties had, but the Court should also consider the time span of the defendant's undetected sexual activity. Well, the time span of the Defendant's undetected sexual activity for the offenses that he pled guilty to and for which he was convicted is a few months. You've got four counts occurring on November the 14th of 2011, and the remaining two counts occurring, based on the best or only evidence that the Court has, around August of 2011. So these six counts occurred within that time frame, two in – two in or close to August of 2011 and four in November of 2011. So that is the time span of the Defendant's undetected sexual activity.

Now, there may be a belief that his sexual activity occurred longer [than] that. That may be true. But for sentencing purposes the Court can only consider the time span of what he is convicted of, and the Court cannot assume other facts that are not in evidence and which have not been established beyond a reasonable doubt.

The Court is also – has to consider the nature and the scope of the sexual acts, and the extent of the residual, physical and mental damage to the victim. First of all, with respect to the nature and the scope of the sexual acts, the – the nature of the acts was five counts of taking photographs of a portion of the child's body, and one count of actual contact with the child which makes out the sexual battery. That's the scope of – that's the nature of the acts.

The scope of the acts are, in this case, virtually the same as the nature of the acts. The depictions are all basically the same. One is more graphic than others, but they are basically photographs of the – of the bottom of this child, and one then of the vaginal area of the child.

And the Court is also to consider the extent of any residual, physical and mental damage to the victim. Well, there hasn't really been any – well, there's been some testimony about physical damage, and I – I will categorize wetting one's self as a physical damage; it also, I guess, could be categorized as a mental damage, but certainly in the – in the realm of mental damage to the victim, based on the testimony that I heard, there has been observations both

-7-

by the mother and the grandmother of – of the child changing in the sense that – becoming more shy at times, becoming – obviously concerned or dissatisfied if something that she's doing is controlled by or dictated by a man instead of a woman; expressions of concern by the child as to who was going to be around when she goes somewhere, those are – those are all residual effects on the victim. Now, they may change, and hopefully – hopefully they will change over time and – but as far as what the Court has been exposed to by way of evidence, that is probative of residual damage, the Court finds that there has been some residual damage to the victim; mainly mental as opposed to physical as I have referred to.

The trial court's findings meet the criteria set out in *James Allen Pollard*. The trial court "properly articulate[d] reasons for ordering consecutive sentences" and "provid[ed] a basis for meaningful appellate review . . . ." We conclude that the sentences imposed were reasonable and there was no abuse of discretion. Therefore, we affirm the sentences on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE